THOMAS CANNON, Appellant, v. THE CITY OF ST. JOSEPH, Respondent.

Kansas City Court of Appeals, November 9, 1896.

Municipal Corporations: SURFACE WATER: STREET IMPROVEMENTS: ACTION. A city is not liable for the natural result of the flowing of surface water by street improvement, but it can not by such improvement collect a body of water in one place and by artificial means throw it upon the landowner; and, if it does, action will lie therefor.

*Appeal from the Buchanan Circuit Court.*—HON. A. M. WOODSON, Judge.

REVERSED AND REMANDED.

*Thos. F. Ryan* and *Jas. W. Ryan* for appellant.

(1) It is now the established law in this state that the authorities of a city can not collect surface water into drains or sewers and discharge it in unusual quantities onto private property. *Rychlicki v. City of St. Joseph*, 98 Mo. 501; *Carson v. City of Springfield*, 53 Mo. App. 289; *Paddock v. Somes*, 102 Mo. 238; *McCormick v. Railroad*, 70 Mo. 359; *Quanan v. Seip*, 23 Am. Rep. 520; *Nevins v. Peoria*, 41 Ill. 502; *Pettigrew v. Greensville*, 25 Wis. 223; 2 Thomp. on Neg. 748. (2) The act of respondent city, in damaging appellant's property, as shown by the facts in this case, was taking and damaging of private property for public use within the meaning of the constitution. *Carson v. City of Springfield*, 53 Mo. App. 259; *Davis v. Railroad*, 119 Mo. 180; *Hickman v. City of Kansas*, 120 Mo. 110; *Pumpelly v. Green Bay Co.*, 13 Wall. 168.

*W. K. Amick* for respondent.

(1) Appellant makes no claim for damages on account of the grading of Felix street, which stopped the natural flow and backed the water upon his property. (2) There was no additional burden thrown upon appellant's land than it would otherwise have suffered. The surface water naturally collected upon his land; besides, the water complained of was cast back into the natural waterway before it reached appellant's property, it afterward being forced out of the waterway, and, having no outlet, collected on his premises. Respondent had the right to discharge the water into a natural waterway. *McCormick v. Railroad*, 70 Mo. 360; *Rychlicki v. City of St. Louis*, 98 Mo. 497; *Stewart v. City of Clinton*, 79 Mo. 612; Cooley on Torts, 575–580.

ELLISON, J.—This action is for damages to plaintiff's property, consisting of four lots aggregating one hundred feet in width by one hundred and twelve and one half feet in depth, by reason of the defendant city collecting the surface water into one body and casting it upon the property so that it was covered to the depth of several feet. The trial court, at the close of plaintiff's testimony, sustained a demurrer to the evidence, and he comes here for relief.

The evidence for plaintiff tended to show that four streets figure in this controversy—Jules street, a block north of plaintiff's property; Francis street, on which the property faces, being two lots from the corner; Felix street, and Twenty-fourth street. Jules, Francis, and Felix run east and west, while Twenty-fourth runs north and south. Plaintiff's property is a block south of Jules street, faces on Francis street, and is a block north of Felix; that is, it lies on Francis street, be-

tween Jules and Felix, being a block south of Jules and a block north of Felix, as just stated. The property lies two lots east of the corner of Twenty-fourth and Francis streets. It was lower than the surrounding ground except on the south or southeast; in consequence of which, the natural drain of surface water was, in a general way, from the north or northwest, down over plaintiff's property, from up in the direction of Jules street.

This being so, a ditch had formed from up beyond Jules street, running down Twenty-fourth street across Francis, then turning diagonally across the center of the two lots lying between plaintiff's property and Twenty-fourth street, and going through a small portion of the southwest corner of plaintiff's property. This ditch operated as a drain for surface water, and left the great part of plaintiff's property dry and in good condition for gardening. In this condition of affairs, the city began to improve the streets by grading. It graded Jules street, running east and west, lying, as before stated, a block north of plaintiff's property. This had the effect of collecting the surface water on the north side of the grade, which had formerly taken its course down the aforesaid ditch across a corner of plaintiff's property. The city likewise graded Felix street, south of plaintiff's property, by raising an embankment. It did the same with Twenty-fourth street. This had the effect of draining any water which would come from up about Jules street on the block in which was plaintiff's property. In order to take away the water which collected on the north side of the grade of Jules street, the city constructed a sewer down Twenty-fourth street, a distance of half a block, and turned it into an alley, where it was discharged onto the lower half of that block, down across Francis street, over

plaintiff's property and becoming dammed to the depth of eight or ten feet by the grades of Twenty-fourth and Felix streets. In other words, the city, after having collected the water in a body on the north side of Jules street, drew it off by means of a sewer, inlets, and sluice-boxes, down to a single point where it was discharged over plaintiff's property, being unable to escape below by reason of the grades constructed on Twenty-fourth and Felix streets. Before this work by the city, as we have stated, the water found its way off of the immediate surrounding grounds by means of the ditch which had been formed. The evidence tended to show considerable damage to plaintiff's property.

We have no doubt of plaintiff's right to recover. A city, being under obligation to improve its streets and keep them in repair, may establish grades which have the direct effect of changing the course of surface water, and run it in a direction where it may do damage to landowners, which was not suffered before the improvement. In other words, the natural result following the street improvement will not render the city liable, though it works injury. But the city can not, by street improvement, collect a large body of water in one place, and then, by artificial means, throw it in a body upon the landowner, without being responsible in damages. The city may, by artificial means, conduct the water so collected into the channels of drainage where it had formerly and naturally escaped. As in this case, the city might have so conducted the water which it collected north of Jules street, that it would have been discharged in a proper way into the ditch where it had theretofore flowed. In this statement we leave out of account the effect, if any, which the embankments south would have had on such a case. The foregoing views are amply supported by *Rychlicki v. City of St Joseph*, 98 Mo. 501; *McCormick v. Railroad*,

70 Mo. 360, and the cases therein discussed and referred to. "If the owner of the upper ground wrongfully direct an unnatural quantity of water upon the ground of a lower neighbor, by collecting several streams together and discharging them at one place, or by any other means, the neighbor below may have an action against him." *Kauffman v. Griesemer*, 26 Pa. St. 415.

The judgment will be reversed and cause remanded for trial. All concur.