## LYDIA M. LEWIS et al., Respondents, v. CITY OF SPRINGFIELD, Appellant.

### Springfield Court of Appeals, February 7, 1910.

1. **PLEADING:** Municipal Corporations: Changing Grade of Street: Surface Water: Damage to Property: Sufficiency of Petition. In an action against a city for damage to property from surface water diverted from its natural course by the change in the grade of a street, although the petition did not contain a specific allegation that, in the grading of the streets named, defendant had changed the flow of surface water and diverted it from its natural course, and thrown it upon plaintiffs' property in a greater volume than before, yet the petition contained allegations to the effect that the grading was negligently and carelessly done, and that defendant negligently and carelessly failed to construct sufficient gutters to carry off the water, and the necessary implication from the language of the petition was that the volume of the water was greater after the grading than before; *held*, that the petition was sufficient after verdict.

2. **MUNICIPAL CORPORATIONS:** Changing Grade of Street: Surface Water: Damage to Property. A city is not liable for damages resulting from an incidental change of the flow of surface water caused by the change of the grade of a street, but where, by the street improvement, a large body of surface water is collected in one place and then, by artificial means, it is thrown upon private property causing damage, the city is liable.

3. ———: ———: Liability of Damage to Private Property. Under the Constitution of 1875, all damages to private property resulting from a change in the grade of a street by a municipality must be paid for by the city.

Appeal from Greene Circuit Court.—*Hon. Alfred Page,* Judge.

AFFIRMED.

*J. H. Mason* and *O. E. Gorman* for appellant.

(1) Municipal corporations are only liable for negligence of their servants and agents in grading and changing of grades of its streets when same is done by

authority of an ordinance, and the passage of an ordinance can only be proved by the record. Stewart v. City of Clinton, 79 Mo. 610; Sheehan v. Gleeson, 46 Mo. 100; 1 Dillon, Munic. Corp., 310; 1 Greenleaf, Ev. (14 Ed.), 86. (2) The law places no duty on defendant to construct any drains whatever to take care of surface water. Imler v. Springfield, 55 Mo. 119; 30 A. and E. Ency. of Law, 339; Dillon, Mun. Corp., 799; Gannon v. Hargadon, 100 Allen (Mass.) 106.

*Hamlin & Seawell* for respondents.

(1) "Prior to the adoption of the Constitution of 1875, a municipal corporation was not liable to an abutting owner of land for damages resulting from a change in the grade of a street. Now all damages to private property which result from a change of grade of a street must be paid by a municipality." Carson v. City, 53 Mo. App. 289. (2) If a municipal corporation is not required to take care of surface water in the first instance, by constructing drains, etc., yet it has not the right to collect it in a body and convey it to the premises of a person and then not provide a sufficient outlet. Rychlicke v. City, 98 Mo. 497; Paddock v. Sommes, 102 Mo. 237; Ready v. Railroad, 98 Mo. App. 467; Stewart v. Clinton, 79 Mo. 612.

NIXON, P. J.—This was an action for damages commenced before a justice of the peace arising out of the alleged failure on the part of the city of Springfield to properly grade its streets, whereby a large quantity of surface water was so collected as to cause it to be thrown upon respondents' lot by reason of the insufficiency of the gutter provided. From a judgment for two hundred and fifty dollars, the city appealed to the circuit court, where, upon a trial by jury, respondents obtained a verdict for fifty dollars. The case is here on the appeal of the city. The facts will appear in the opinion.

I. It is contended by appellant that its motion in arrest of judgment should have been sustained for the reason that neither count in the petition states a cause of action and will not support a verdict.

The first count in the petition, after alleging that respondents are husband and wife and the owners of lot four in Hendricks & Jones' addition to the city of Springfield, and that the city of Springfield was a municipal corporation of the third class, and that it has control over its streets and alleys with the duty to construct and control its streets and alleys in such a way that their use would not interfere with the property and enjoyment of property-owners and citizens living along said streets and alleys, and that Lynn street is a street and thoroughfare within the said city adjacent to the aforesaid property of the respondents, alleges:

"That on the —— day of ——, the defendant so negligently constructed a gutter on the south side of Lynn street and so negligently and carelessly permitted the same to become filled with dirt and trash that the water overflowed therefrom on the —— day of —— and upon divers other days and dates thereafter into an alley adjoining plaintiffs' property, at each overflow rendering same unhealthful, and upon each overflow the soil in the yard was washed, thereby injuring the yard, and the appearance of the yard upon each overflow would be bad and said premises were rendered unhealthful; that the said cellar and basement were injured and rendered unfit for use; that offensive odors in the premises were created by each of said overflows, the rooms of said house being rendered damp and unhealthful and leaving therein a musty smell or odor.

"That on the —— day of ——, by reason of an overflow caused as aforesaid, the premises of plaintiffs were rendered unhealthful, causing sickness in his family and an expenditure of $—— for medicines, medical attention and nursing, and that on divers occasions there-

after, on account of the many and frequent overflows, caused as aforesaid, the family of plaintiffs were rendered sick and unhealthful.

"That each of said overflows could be prevented and stopped, the said nuisance as aforesaid being temporary in character, and this action is brought to recover damages on account of said temporary nuisance and for damages as aforesaid, on account of the overflows from the time of the purchase of said property by plaintiffs to the present time, and plaintiffs say that by reason of said overflows, as aforesaid, and the negligence of the defendant, as aforesaid, they are damaged in the sum of $250 for which they ask judgment."

Plaintiffs allege in their second count that they are the owners of lot four on Lynn street in Hendricks & Jones' addition to the city of Springfield, and have a dwelling-house thereon in which they reside.

"That the following named streets run east and west in said city, to-wit: Pacific, Locust, Division, Hovey avenue and Lynn. That Boonville and Campbell streets run north and south in said city, all of which are public thoroughfares, under the control and management of said defendant.

"That the defendant on the —— day of ——, under ordinances for that purpose, so negligently, carelessly and unskilfully graded said Boonville and Campbell streets that the water from all the other streets above named was conveyed, carried and collected into Lynn street, at and near plaintiffs' property aforesaid, and defendant negligently and carelessly failed to construct sufficient gutters and water basins to carry the water off said Lynn street where the same fronts the property of plaintiffs, by reason of which negligence, said water overflowed on the —— day of —— and upon divers other days and dates thereafter into an alley adjoining plaintiffs' property, at each overflow rendering same unhealthful, and upon each overflow the soil in the yard was washed, thereby injuring the yard, and

appearance of said yard upon each overflow would be bad, and said premises were rendered unhealthful. That the said cellar and basement were injured and rendered unfit for use; that the offensive odors in the premises were created by each of said overflows, the rooms of said house being rendered damp and unhealthful and leaving therein a musty smell or odor," and concluding as in the first count.

It is true that nowhere in this petition is there a specific allegation that in the grading of the streets named, defendant had changed the flow of surface water by diverting it from its natural course, or that defendant had gathered the water from its natural course, and brought it down to plaintiffs' property in a greater volume that it had come prior to the grading. But it is alleged that the defendant "so negligently, carelessly and unskilfully graded said Boonville and Campbell streets that the water from all the other streets above named was conveyed, carried and collected into Lynn street, at and near plaintiffs' property aforesaid, and defendant negligently and carelessly failed to construct sufficient gutters and water basins to carry the water off said Lynn street where the same fronts the property of the plaintiffs," and so forth. This, we think, is sufficient. The necessary implication from the language used is that the volume of water was greater after the grading than before. As stated in the opinion in the case of Carson v. City of Springfield, 53 Mo. App. 294, "A city is not liable for the incidental change of the flow of surface water, but it is the established law of this State that the authorities of a city cannot collect surface water into drains or sewers, and discharge it in unusual quantities onto private property. [Rychlicki v. City of St. Louis, 98 Mo. 501, 11 S. W. 1001; Paddock v. Somes, 102 Mo. 226, 14 S. W. 746.] It would seem to follow logically from this that, if a city by means of gutters should collect the surface water from a large area, it would be responsi-

ble for its overflow during ordinary rains by reason of insufficient gutters, or for failure to provide other sufficient means for its escape." This principle is reiterated in the case of Cannon v. City of St. Joseph, 67 Mo. App. l. c. 370, where the following language is used: "A city, being under obligation to improve its streets and keep them in repair, may establish grades which have the direct effect of changing the course of surface water, and run it in a direction where it may do damage to landowners, which was not suffered before the improvement. In other words, the natural result following street improvement will not render the city liable, though it works injury. But the city cannot, by street improvement, collect a large body of water in one place, and then, by artificial means, throw it in a body upon the landowner, without being responsible in damages. The city may, by artificial means, conduct the water so collected into the channels of drainage where it had formerly and naturally escaped." We think the petition sufficiently states a cause of action.

II. It is urged that the trial court erred in refusing to give the following instruction:

"The court instructs the jury that under the law it is not the duty of the defendant to provide gutters or other means of conveyance for surface water and if you find from the evidence that any surface water flowed upon or over plaintiffs' land or lot, by reason of insufficient drains, the defendant is not liable therefor."

The case of Imler v. City of Springfield, 55 Mo. 119, is relied upon to support the correctness of this instruction. That case was decided in 1874, prior to the adoption of the Constitution of 1875. As stated by BIGGS, J., in the case of Carson v. City of Springfield, *supra*: "Prior to the adoption of the Constitution of 1875, a municipal corporation was not liable to an abutting owner of land for damages resulting from a change in the grade of a street. Such damages were regarded as *damnum absque injuria*. It was only where

such work was negligently done that the owner could recover anything. Now all damages to private property, which result from a change in the grade of a street, must be paid by the municipality. This has been held to be 'the taking or damaging of private property for public use,' within the meaning of the Constitution. [Werth v. City of Springfield, 78 Mo. 107; Householder v. City of Kansas, 83 Mo. 488.]" It is therefore clear that this question was long ago put to rest and will not be seriously considered at this late day.

III. It is next assigned that the court erred in overruling appellant's demurrer to the respondents' evidence, and the force of appellant's argument is spent on the assertion that the grading complained of is nowhere shown to have been done in pursuance of an ordinance.

It is true that there is no proof in the record that Boonville street or any of the side streets named in the petition were graded pursuant to an ordinance or that the gutter along the south side of Lynn street was constructed by virtue of an ordinance. Cases are cited by appellant to support this contention that unless the ordinance was proved, properly, there would be no liability upon the city. But the record shows that the appellant admitted before the introduction of evidence in the case that Campbell street was graded by an ordinance of the city. An examination of the instructions given by the court to the jury reveals the fact that the court confined the right to recover on account of large bodies of water having been collected in *Campbell street*, by reason of *Campbell street* having been graded, and carried and conveyed on account of said grading to the premises of respondents.

But it is contended that respondents' evidence fails to show that by the grading of Campbell street, water was collected and brought down to the intersection of Lynn street in a greater volume than it would have come otherwise, and further fails to show that ap-

pellant was in any way responsible for the direction in which it flowed away from the intersection of Campbell and Lynn streets, appellant asserting that the record entirely fails to show that appellant ever graded Lynn street or constructed the gutter along the south side thereof; that for these reasons, appellant's demurrer to respondents' evidence should have been sustained.

We have patiently and carefully examined the evidence in this case and find it ample to support the finding of the jury.

IV. Appellant contends that the court erred in refusing to give a peremptory instruction at the close of all the evidence for the reason that the evidence is said to show undisputedly that the cause of this water overflowing and backing up on respondents' premises was the filling of the lots owned by Lapham on the west side of the alley. There is some evidence to this effect in the record, but it is far from being undisputed. This issue was fairly submitted to the jury by the following instruction:

"The court instructs the jury that if you find from the evidence that plaintiffs' land was in the course where surface water would naturally flow, and you further find that said water was damned up and stopped up by reason of the filling of the lots west of plaintiffs' land, and was not dammed or stopped by the defendant, and you further find that the defendant did not cast any water upon plaintiffs' land that would not naturally flow upon it, then your verdict should be for the defendant."

This case was tried on declarations of the law most favorable to the city and the judgment was very reasonable and fully sustained by the evidence. We find no material error in the record and the judgment is therefore affirmed. All concur.