Gerard L. BETTINGER and Karen R. Bettinger, Plaintiffs–Appellants,

v.

The CITY OF SPRINGFIELD, Missouri, Defendant–Respondent.

No. 26391.

Missouri Court of Appeals, Southern District, Division Two.

March 28, 2005.

Rick J. Muenks, Springfield, MO, for appellants.

Douglas Harpool, Tamara F. de Wild, Lathrop & Gage, Springfield, MO, for respondent.

KENNETH W. SHRUM, Judge.

This suit by Gerard and Karen Bettinger ("Plaintiffs") against the City of Springfield, Missouri ("City"), seeks damages based on a theory of inverse condemnation. They claim City took their real estate for public use without fairly compensating them. Plaintiffs allege this taking occurred when a public drainage system failed to carry away surface water run-off that collected therein as a result of heavy rainfall; and, when the overflow escaped the confines of the drainage easement, the water damaged Plaintiffs' residential property. City's motion for summary judgment was sustained. This appeal by Plaintiffs followed. We affirm.

## STANDARD OF REVIEW

"When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered." *ITT Commercial Fin. v. Mid–Am. Marine*, 854 S.W.2d 371, 376[1] (Mo. banc 1993). Summary judgment is an issue of law which we review *de novo*. *Id.* at 376[4]. Summary judgment is proper when a movant demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Jos. A. Bank Clothiers, Inc. v. Brodsky*, 950 S.W.2d 297, 300 (Mo.App.1997). "The review of a grant of summary judgment is equivalent to reviewing a court-tried proceeding; if the judgment is sustainable under any theory, it must be sustained." *Id.* at 300[1].

## FACTS

Plaintiffs own Lot 54, Briarwood Subdivision, Springfield, Missouri, upon which their home is located. On July 12, 2000, this property was damaged when water from a storm water drainage system overflowed onto portions of Plaintiffs' lot not subject to a drainage easement.

The Briarwood subdivision was laid out and platted in June 1972, and the plat thereof was "presented to, accepted and approved" by City on September 18, 1972. The plat provided for an eighteen-foot drainage easement, running along the south boundary line of Lot 54 and the

north boundary of Lot 61 which was essentially divided equally between the two lots. Beginning in 1972, City built and maintained "drainage improvements" within that easement.

After the Briarwood subdivision, land lying north of Briarwood was also subdivided and platted, and the plats thereof accepted and approved by City. Specifically, City approved and accepted Holiday South Subdivision on April 9, 1990 (ordinance No. 21690), the Holiday Addition First Subdivision on May 7, 1990 (ordinance No. 21706), the Holiday Addition Subdivision on May 7, 1990 (ordinance No. 21707), and a final plat of Holiday South 1st Addition on April 4, 1994 (ordinance No. 22505). The owner and subdivider of each of these tracts dedicated public easements to the public for use in draining storm water. When City approved the respective plats, it accepted these easements.

When completed, the Holiday Additions had storm water drainage systems in place. In turn, these systems were connected with the Briarwood Subdivision storm water drainage system. As a consequence, a single storm water drainage system served parts of each of the Holiday subdivisions, and water collected therein traveled through the drainage system in the Briarwood subdivision.

An additional part of this continuous storm water drainage system involved a subdivision known as South View Addition, which City annexed on December 31, 1968, and Lots 9 and 10 of Holiday South Subdivision which City acquired in May 1990. These lots were used by City for the con-struction of drainage improvements for the system, including detention basins and culverts.

■ During the early morning hours of July 12, 2000, seven inches of rain fell upon the city in less than six hours. This "record" rainfall "put the magnitude of the storm between a 100 and 500–year event." It was during this weather event that water in the subject drainage system overflowed, left the easement area, and damaged Plaintiffs' home and other property. This led Plaintiffs to file the instant damage suit, captioned "Petition for Damages (Inverse Condemnation)."[1] Plaintiffs asked for $54,155 in damages for the "wrongful appropriation."

As the case progressed and after some discovery made, Plaintiffs filed a "Motion for Summary Judgment on Liability Alone." City filed a "Cross Motion for Summary Judgment." The trial court denied Plaintiffs' motion and granted City's cross-motion for summary judgment. This appeal followed.

## DISCUSSION AND DECISION

■ We reproduce Plaintiffs' single point relied on:

"The trial court erred in granting the City's Motion for Summary Judgment ... because [Plaintiffs'] private property was appropriated for a public use without just compensation in that the water run-off within the [C]ity's public drainage system exceeded the boundaries of the public drainage easement resulting in a taking of private property for a public use."

1. Article I, Section 26 of the Missouri Constitution states that "private property shall not be taken or damaged for public use without just compensation." "Inverse condemnation is a cause of action against a governmental agency to recover the value of property taken by the agency, though no formal exercise of the power of eminent domain has been completed." *Mo. Real Estate and Ins. Agency v. St. Louis County,* 959 S.W.2d 847, 849[2] (Mo. App.1997).

 This case involves the law of surface water in Missouri which has a long and somewhat tortured history.[2] From 1884 and until the case of *Heins Implement v. Hwy. & Transp. Comm'n.*, 859 S.W.2d 681 (Mo.banc 1993), the so-called "common enemy" doctrine was applied.[3] *Id.* at 686. Over the years, however, courts often applied the common enemy rule differently, created exceptions to it, and frequently disagreed on the scope of the exceptions. *Id.* at 686–87. As such, the *Heins* court concluded in 1993 that surface water case precedents could no longer be reconciled, *Id.* at 687, and the common enemy rule had outlived its usefulness. *Id.* at 690–91. Therefore, *Heins* rejected the common enemy doctrine and accepted the rule of reasonable use. *Id.* at 689–91.

 The rule of reasonable use does not lay down any specific rights or privileges regarding surface waters, but leaves each case to be decided on its own facts in accordance with "principles of fairness and common sense." *Id.* at 689. The thrust of the reasonable use rule states that " 'each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface water is altered thereby and causes harm to others, but incurs liability when his harmful interference with the flow of surface waters is unreasonable.' " *Id.* at 689[7] (citation omitted).

 Liability for surface water flow arises when the defendant's conduct regarding surface water is (1) intentional and unreasonable, or (2) negligent, reckless, or in the course of an abnormally dangerous activity. *Id.* at 689–90[9]. Otherwise stated, the reasonable use rule simply imposes "a duty upon any landowner in the use of his or her land not to needlessly or negligently injure by surface water adjoining lands owned by others, or in the breach thereof to pay for the resulting damages." *Id.* at 690.

With this in mind, we now consider Plaintiffs' argument. As we understand it, Plaintiffs first take the position that the *Heins* case and the reasonable use rule adopted by it do not apply here. Without expressly saying so, the essence of Plaintiffs' theory is one of strict liability, i.e., City's acceptance, control, and maintenance of the subject storm water drainage systems rendered it liable for damages to Plaintiffs' property that were caused when water in the drainage system left the easement and overflowed onto their property without regard to the cause of the overflow.[4]

2. Surface water takes many forms. For instance, overflow during flooding from a river, stream, or creek is surface water. *Sigler v. Inter–River Drainage Dist.*, 311 Mo. 175, 279 S.W. 50, 56 (1925). Generally stated, surface water is water running across land that emanates from natural sources such as rain or melting snow. *Happy v. Kenton*, 362 Mo. 1156, 247 S.W.2d 698, 700–01 (1952); *Walther v. City of Cape Girardeau*, 166 Mo.App. 467, 149 S.W. 36, 38 (1912).

3. This doctrine held that surface water was a common enemy to all landowners; thus, he or she was allowed to guard against it in his or her own way. *Abbott v. The K.C., St. J. & C.B. Ry. Co.*, 83 Mo. 271, 283–86, 1884 WL 9487 (1884); *Grant v. St. Louis, I.M. & S. Ry. Co.*, 149 Mo.App. 306, 130 S.W. 80, 81 (1910). As such, when a landowner improved his or her property, he or she was not responsible for damages to the neighbor's land by reason of the fact that surface water might thereby have been turned upon his or her neighbor, so long as the improvements were done in a "proper manner." *Id.*

4. It appears that both parties asked the trial court to decide this question of law via summary judgment. However, essentially no fact question was presented by what was filed. Consequently, the parties do not contend on appeal that factual issues exist. Whether summary judgment was an appropriate vehi-

Plaintiffs begin by claiming that *Heins* and the reasonable use rule have no application to their case due to factual differences. Specifically, they state that, in *Heins*, private land was damaged by water that could not escape because a highway bypass was built with an inadequate culvert, whereas here Plaintiffs' land was damaged by a public drainage system that overflowed. *Id.* at 691.

■ Their first argument as to why this fact distinction makes a difference involves a definition of "surface water" lifted from *Roberts v. Hocker*, 610 S.W.2d 321 (Mo.App.1980), namely, "surface water" is "the uncollected flow from falling rain or melting snow, or are waters which rise in the earth from springs and diffuse over the surface of the earth.' [Clark, Waters & Water Rights, § 52.1(a) 1967]." *Id.* at 326. Focusing exclusively on this definition, Plaintiffs seem to suggest that surface water collected in a municipal drainage system (such as occurred here) loses its identity as surface water once it is collected in a drainage system; consequently, the *Heins* case (which dealt with surface water) is not applicable.

Without further developing that argument, Plaintiffs next cite *Clark v. City of Springfield*, 241 S.W.2d 100 (Mo.App. 1951), for the proposition that Missouri has "traditionally recognized damages arising from the overflow of surface and sewage waters onto and across private property." Inexplicably, Plaintiffs never state why or

how *Clark* supports their position that the *Heins* rule of reasonable use does not attend when water is collected in a public drainage system and then overflows causing damage.[5] Whatever undisclosed connection Plaintiffs believe exists between the authorities they cite and the arguments they make, their arguments fail for the following reasons.

■ First, the water that flooded Plaintiffs' property is "surface water" for the purpose of legal analysis despite their argument to the contrary. The fact that water is artificially "collected" and then discharges or overflows onto another's property does not necessarily convert the water into something else for purposes of imposing or avoiding liability for damages. *See, e.g., Heins*, 859 S.W.2d 681 ("pooling" of water considered surface water); *Thomas v. City of Kansas City*, 92 S.W.3d 92 (Mo.App.2002) (overflow of drainage systems treated as surface waters); *Darst v. Metro. St. Louis Sewer Dist.*, 757 S.W.2d 270 (Mo.App.1988) (flood water of a stream entirely escaping banks is surface water); *Kenton*, 247 S.W.2d at 700–01 (water running through sewer pipe is surface water); 78 Am.Jur.2d, *Waters*, § 174 (2002).

Second, *Clark* and cases cited therein, as well as the language used, no longer have relevancy. This follows because the common enemy rule was at issue in *Clark* and that rule was displaced via *Heins*.

■ Third, assuming arguendo that the surface water doctrine discussed in

cle to raise this question of law, as opposed to a motion to dismiss for the failure to state a claim, is a question not before this court.

**5.** In developing their argument, Plaintiffs do nothing more than quote this language from *Clark*, 241 S.W.2d at 106, which in turn came verbatim from *Paddock v. Somes*, 102 Mo. 226, 14 S.W. 746, 749 (1890): "And of course it is an actionable injury and nuisance for one to collect surface waters and cast them in a

body upon a neighboring proprietor; and the same rule holds in this regard, both as to individuals and to municipal corporations. The latter, though not obligated to construct sewers or drains to protect adjoining owners against the flow of surface water from public ways, yet, if they do construct drains, and thus carry water and cast water upon adjacent lands are as much responsible as though they had invaded such lands by sending their servants thereon."

*Clark* still governed, it has limitations. *See Lewis v. City of Springfield,* 142 Mo. App. 84, 125 S.W. 824, 825 (1910) (city only liable for flooding of drainage systems when overflow was caused by "ordinary rains," quoting *Carson v. City of Springfield,* 53 Mo.App. 289, 294–95 (1893)). On this record, the *Lewis* limitation would govern, compelling a ruling for City as a matter of law.

We next consider another "strict liability" argument made by Plaintiffs, i.e., the reasonable use rule does not apply because of note 15 in the *Heins* decision. There, the following is found: "It has been suggested that even a reasonable diversion of surface water by a public entity constitutes a 'taking.' " *Heins,* 859 S.W.2d at 691 n. 15 (citing *Wilson v. Ramacher,* 352 N.W.2d 389, 394 (Minn.1984)). Based on the footnote and the *Heins* court's mention of the *Ramacher* case, Plaintiffs assert that City is strictly liable because the flooding resulted in a taking or damaging of their property without just compensation.

■ The Supreme Court of Missouri adopted the reasonable use surface water rule in 1993 for the avowed purpose of "bring[ing] into one classification all waters over the use of which controversy may arise." *Heins,* 859 S.W.2d at 691 (quoting *Higday v. Nickolaus,* 469 S.W.2d 859, 869–70 (Mo.App.1971)). The court held "that when, as a result of a public works project, private property is damaged by an unreasonable diversion of surface waters, whether by *design or mistake,* the owner may bring an action for inverse condemnation." *Heins,* 859 S.W.2d at 691[11] (emphasis supplied).

With this language in the body of the *Heins* opinion, we can only speculate on the intention of the *Heins* court as intimated by its note 15 comment. Perhaps, the court was suggesting that even a reasonable diversion of water by a public entity onto a private owner's land might be an unconstitutional taking if the public entity did so (a) intentionally, knowing it had no right to use the land without paying for it, or (b) in the mistaken belief it had the lawful right to so use the private land for that purpose and then refused to pay for the land or damage thereto. In any event, the note 15 comment was *obiter dicta.*

Assuming *arguendo* that this was the intention behind the comment, Plaintiffs neither pleaded facts supportive of the "design" or "mistake" elements, nor responded to City's summary judgment motion with any fact to support the notion that City acted by "design" or through "mistake."

On the record presented, there are no disputed facts, which if resolved favorably to Plaintiffs, would show (1) City intentionally flooded Plaintiffs' land (as occurred in *Ramacher*), or (2) the flooding occurred as the result of City's negligent conduct, reckless conduct, or conduct in the course of an abnormally dangerous activity. To the contrary, the undisputed evidence reveals Plaintiffs' property was damaged by water that fell in record amounts and flooded areas never before flooded.

■ On this record, this case is governed by the well established general rule that governmental entities are not liable in inverse condemnation when the damage is the result of natural forces. *See Ressel v. Scott County,* 927 S.W.2d 518, 521[8] (Mo. App.1996) and cases cited therein; *Welch v. City of Appleton,* 265 Wis.2d 688, 666 N.W.2d 511, 516–17 (2003). The flooding of Plaintiffs' property was not the result of anything City did or failed to do, either intentionally or by design; it simply was the result of natural forces. Point denied.

The trial court did not err in granting summary judgment in favor of City. The

issue presented by City's motion for summary judgment was whether the surface water rule of law adopted in *Heins* governed here. This was a question of law which the trial court correctly decided adversely to Plaintiffs.

The judgment of the trial court is affirmed.

PARRISH, P.J., and BARNEY, J., concur.