Craig **WELLS** et al., Respondents,

v.

**STATE HIGHWAY COMMISSION** of
Missouri, Appellant.

**No. 57447.**

Supreme Court of Missouri,
Division No. 2.

Dec. 10, 1973.

Motion for Rehearing or to Transfer to
Court en Banc Denied Jan. 14, 1974.

Leonard R. Yocum, Clayton, for respondents.

Robert L. Hyder, Jefferson City, Paul R. Ferber, Kirkwood, for appellant.

HENRY I. EAGER, Special Commissioner.

In this action the plaintiffs seek damages from the State Highway Commission for the silting and partial filling of a lake on their respective properties. In the first count the Wells are plaintiffs and in the second count the Crowders are the plaintiffs. The contractor on the highway project was originally joined in two additional counts, but a voluntary dismissal as to it was entered as the trial began. The theory of plaintiffs was that their respective properties had been damaged within the meaning of Sec. 26, Art. I of the Missouri Constitution, V.A.M.S., which provides, in part, that "private property shall not be

taken or damaged for public use without just compensation." The "or damaged" element was first included in the Constitution of 1875. The provision is said to be self-enforcing, and plaintiffs sue directly thereunder. There is no controversy concerning the pleadings and we need not review them; they are sufficient to raise the issues which we discuss. The Wells had a verdict for $11,000, to which the trial court added interest of $4,235 under § 523.045, RSMo 1969, V.A.M.S., and the Crowders had a verdict for $3,000, to which interest of $1,155 was added. The combined judgments totaled $19,390. An appeal was taken by the defendant prior to September 11, 1970, the effective date of the statute (H. B. 34, Laws 1969, 3rd Extra Session, p. 110), which raised our monetary jurisdiction to $30,000. The appeal was taken, however, to the Missouri Court of Appeals, St. Louis District, which, by its opinion and order of November 3, 1971, transferred the case to this Court for lack of jurisdiction.

After the conclusion of plaintiffs' evidence defendant moved for a directed verdict, specifically raising the issues which it presents here. It filed no motion for a new trial, and no point is made on the amounts of the damages. The sole question here is whether a verdict should have been directed.

The action involves the construction of a portion of Interstate Highway 270 in North St. Louis County in 1961, 1962 and 1963. Plaintiffs Wells had bought a tract of land of about thirteen and one-fourth acres in 1952 and had constructed a lake thereon in 1953 by building a dam in a valley or ravine. This tract lay north of the highway and the natural drainway or ravine, which ran generally northerly, furnished water for the lake. A very attractive lake of approximately two and one-half acres was created. Plaintiff Wells sold a tract on the westerly shore to the Crowders in 1960, and they built a substantial residence thereon. Wells constructed a residence of some sort, apparently a more or less elaborate "cabin" and installed other improvements. Fish were stocked in the lake and it was used both for fishing and swimming. The lake was approximately 700 feet long. The dam was 300 feet long. The evidence was that the water was clear prior to the road construction, except for a day or two after heavy rains. The depth of the lake varied from about three feet near its "mouth" or beginning, to 14 or 15 feet at the dam; it was five and one-half feet deep in front of Wells' cabin. A strip of land of approximately 4.84 acres owned by someone else lay between Wells' property and the highway right-of-way. The "ravine" or drainage channel crossed that tract which was about 200 feet "deep." The terrain on which the highway was constructed and the surrounding area was covered with grass, brush, shrubs and trees; it was rather rough and hilly and was not being farmed. The highway ran generally east and west.

The road construction continued for approximately two years, beginning in the spring of 1961. To the east and west of the ravine or valley which ran northerly into the plaintiffs' property were hills, several hundred feet distant. In the grading these hills were cut down for the width of the right-of-way, and the dirt thus derived was moved into a fill of 35 feet across the ravine; in fact, the ground level was graded down and the dirt moved to the ravine beyond the crests of both hills for about 500–600 feet; this grading caused the drainage on the highway from each direction to flow toward the ravine from a distance of several hundred feet beyond the point where the crests of the hills originally were. A three-foot tile was inserted under the fill at the bottom of the old drainage channel. Extensive grading was also done south of the main highway for a "side road." The main part of the area remained in a naked condition of dirt and mud for an extended period, apparently for the better part of two years. Photographs show a great amount of erosion. Eventually drainage channels were created (gut-

ters, etc.) which took the runoff down to the "ravine" leading to plaintiffs' lake. The evidence fairly shows that the area from which the runoff came was greater than the original drainage area.

The evidence shows that by 1963 the lake had been so filled in with the mud and silt which came down with the water through the drainage channel, that its depth varied from nothing at the south end to about three and one-half feet at the dam. The upper end was entirely filled in for a distance of about 250 feet, and grass and vegetation grew there, even young trees. Where water remained the bottom was exceedingly muddy. The fish disappeared, the lake became substantially valueless for swimming, and its natural beauty was largely gone. There can be no doubt that the silt and mud which drained from the road construction was the cause of the damage. The case was submitted on an instruction which predicated liability upon the hypothesis that defendant caused surface waters to carry "increased amounts of mud and silt" into the lake. There might be some argument concerning the propriety of that instruction, but the question does not arise on this record.

Defendant's theory at trial and here was and is that plaintiffs failed to show: an unreasonable use of defendant's land; that the surface water had been discharged anywhere except in the natural drainway; or that the discharge exceeded the capacity of the drainway. Defendant apparently concedes that it is subject to the usual principles regulating surface waters. In fact, it relies upon the ramifications of that rule for exoneration, saying that in all respects it complied. Plaintiffs say: (1) that they need not prove an unreasonable use of defendant's land, but only a special damage to their property from defendant's construction, and the loss of a valuable property right; but that (2), even so, the increase in the flow of surface waters and leaving the terrain bare for approximately two years "without adequate safeguards" to control excessive erosion, constituted an unreasonable use. Defendant has made no point of plaintiffs' right to sue it in this action, nor has it objected to the nature or type of the suit.

Plaintiffs have not pleaded negligence; nor did they produce any evidence to show that the methods of construction or the time consumed was different from that generally followed. Essentially, the evidence shows that from the bare land great quantities of silt and mud were carried into plaintiffs' lake, over an extended period, and that there was an increased flow of surface water collected from a substantially greater drainage area than previously existed. The contractor who built the lake estimated that 25,000 cubic yards of mud would have to be dredged out to put the lake back in its original condition.

In Van De Vere v. Kansas City, 107 Mo. 83, 17 S.W. 695 (1891), it was said that, in order to show a damage under the constitutional provision above, the plaintiffs must show that the property itself, or some right or easement connected therewith, is directly affected and that it is specially affected. We find that the change of condition in this property meets that requirement.

Much has been written in Missouri regarding surface waters, during a period of well over 100 years; and the statements are not all wholly consistent. One of the more recent statements of the Missouri rule appears in Haferkamp v. City of Rock Hill, 316 S.W.2d 620 (Mo.1958). There, the defendants started a subdivision, constructed streets, catch basins, etc., and conducted the surface waters through a pipe laid in a natural ravine or drainway on to plaintiffs' land. In other words, the water was artificially collected but then caused to flow through the natural drainage channel. After an extended discussion of the principles and the cases the Court held that the defendants: "* * * in the reasonable use and development of the land, could drain that part in the natural watershed of the sinkhole, and in doing so could collect

surface water thereon in artificial drains and precipitate it into a natural drainway channel thereon where the surface water from the drained area would otherwise naturally go, even though in doing so they might increase and accelerate the flow of the surface water in its natural channel onto the lands of the plaintiffs. We consider that what we have here said is but an application to a specific situation of the general rules previously announced by our courts." Defendant relies upon those principles and that case.

■■ But one cannot artificially collect surface water and dump it upon his neighbor in increased and destructive quantities. Haferkamp, supra; Casanover v. Villanova Realty Co., 209 S.W.2d 556 (Mo.App. 1948). And generally, the authorities require that one must act within reasonable limits and not recklessly, in the development of his land, before they give him the benefit of the "common enemy doctrine" which has become a part of our rule on surface waters. See cases cited in Haferkamp, supra. The Court in Haferkamp referred to our rule as the modified "common enemy doctrine"; but see Camden Special Road District of Ray County v. Taylor, 495 S.W.2d 93 (Mo.App.1973), where the Court said that the requirement of reasonable care was not a modification of the doctrine because it applied only to surface water in its natural diffused state; however, the rather fine distinction is immaterial here. One cannot, by changing the grade on his property, collect water which had previously diffused on to his neighbor's land, and discharge it thereon, destructively, at one point. Peters v. Shull, 379 S.W.2d 837 (Mo.App.1964). And it is further said that one cannot unnecessarily collect surface water and discharge it in a damaging volume upon his neighbor. Camden Special Road District of Ray County v. Taylor, supra; Keener v. Sharp, 341 Mo. 1192, 111 S.W.2d 118 (1937).

■ The facts here show a rather exaggerated case of the collection and discharge of surface water upon plaintiffs; giving to them the benefit of their favorable evidence and the inferences therefrom, a jury could find: that the earth was left in a raw state for approximately two years with enormous erosion; that the land area which drained into plaintiffs' ravine was extended for 500–600 feet beyond each hill (east and west) along the right-of-way and that these extended raw areas were thus caused to drain into that ravine, whereas they had not previously done so; that the construction and the extension caused a substantially increased flow of water and a very large flow of mud; that plaintiffs' lake was substantially ruined by the deposits of mud; that defendant took no steps to prevent the flow of mud with the water; and that enough land was graded to make a fill 35 feet high at the lowest elevation.

We do not believe that the "common enemy doctrine" contemplates the exoneration of a landowner who thus grades his land, leaves it raw for two years or so, extends the drainage area and increases the flow, and discharges everything, mud and all, into the drain which initially served only a part of the area (even though it may be the larger part). It is clear that defendant collected water from and drained the extended areas onto plaintiffs' land in a different channel. Whether we call this an unreasonable use of defendant's land, or say that it unnecessarily or recklessly collected and discharged water and mud upon plaintiffs is immaterial. There is substantial evidence to support a recovery.

■ In addition to the above suggestions, we hold that the discharge here, with its enormous content of mud ceased to be mere surface water. We can lay down no rule of thumb, and each case will depend upon its own facts, but the deposit of 25,000 cubic yards of mud (with the wa-

ter) in a two and one-half acre lake can hardly be classified as a discharge of surface water. This constituted an independent invasion of plaintiffs' properties (and a damage) for which they were entitled to sue in any appropriate common law action, under the self-enforcing constitutional provision. Householder v. City of Kansas, 83 Mo. 488 (1884); State ex rel. Applegate v. Taylor, 224 Mo. 393, 123 S.W. 892 (banc 1909); Little Tarkio Drainage Dist. No. 1 v. Richardson, 237 Mo. 49, 139 S.W. 576, l.c. 585 (1911).

We are aware of the case of Casanover v. Villanova Realty Co., 209 S.W.2d 556 (Mo.App.1948), where the Court said that mud and silt may, by common knowledge, be considered as a part of surface waters. In the ordinary case that may be true. There, the total deposit of mud was "several inches in places" and the flow was apparently of short duration because of a provision for catch basins. The holding in that case, based on those facts, is not persuasive in this case.

Defendant has insisted that the case is governed strictly by our surface water rules, that the doctrine completely exonerates it, and that no submissible case was made. We hold that on these facts a case was made under that doctrine, and that moreover the discharge here was not mere surface water but that the flow of mud constituted an invasion of, and a damage to, plaintiffs' properties under the constitutional prohibition. This opinion is not necessarily an approval of the hypothesis on which the case was submitted to the jury. It has not been necessary to consider that.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by HENRY I. EAGER, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.