**G. W. SCHIFFERDECKER and Frances Schifferdecker, Plaintiffs-Appellants,**

v.

**Clyde William WILLIS and Glendell Willis Mateers and Ray Ervin Willis and Sidney Clifford Willis and Elsie Marie Willis, Defendants-Respondents.**

**No. WD 31511.**

Missouri Court of Appeals,
Western District.

July 14, 1981.

Rehearing Denied Aug. 24, 1981.

Christian F. Stipp, David Thomas, Carrollton, for plaintiffs-appellants.

David P. Macoubrie, James P. Valbracht, Chillicothe, for defendants-respondents.

Before PRITCHARD, P. J., and TURNAGE and CLARK, JJ.

CLARK, Judge.

This action was commenced by Schifferdecker to compel removal of a dam constructed by Willis and to alleviate the overflow of water on Schifferdecker's property which the dam caused. After a bench trial, the relief sought was denied and Schifferdecker appeals.

The facts of the case are essentially not in dispute. All of the land involved in the present controversy is flat river bottom farm property valuable for cultivation when sufficiently dry to admit men and equipment. Before construction of a Missouri River levee, between 1945 and 1953, the land was subject to seasonal overflow from the river and much of the present ground contour is attributable to that former condition. Then, as now, the normal drainage pattern follows the same course as the river, to the north and east.

The Schifferdecker property is bordered on the east by the Missouri River levee, on the north by the Willis land and on the south by land under the ownership of Williams. On either side of the boundary line between the Schifferdecker and Willis properties is a low, wet area described in the evidence as a slough. That area and the water which collected there constitute the source of the present dispute.

Reclamation activities in the river bottom lands followed construction in 1953 of the levee in the subject area. Drainage ditches were excavated and, as material here, were designed to carry water from the Williams, Schifferdecker and Willis properties to the river. One such ditch extended from the southerly part of the Williams land north across Schifferdecker's property to the slough. Another ditch from the opposite end of the slough crossed the Willis land and turned east to the levee where a tube was inserted to permit the water to flow into the river. Using a drag line, some construction was undertaken to connect the ditches through the slough but, in more recent years, silting and farming activity have rendered any boundaries of a ditch through the slough ill defined. Irrespective of the existence of any excavated passageway through the slough, however, the course of water in the ditches was from the Williams and Schifferdecker land to the slough and from the slough through the ditch across the Willis property and into the river.

In area, the slough was located in approximately equal proportions on the Schifferdecker and Willis lands, it was of an elongated shape from north to south and was substantially broader in width than the ditches connected to it. In 1971, Willis caused an earthen dam to be built across the slough on his land some distance north of the line marking Schifferdecker's property. The dam was about three feet high and 250 feet long and, in 1977, was increased in height to about five feet. Near the top of the dam a tube was installed with a "flap" gate which blocked any flow of water from the direction of Schifferdecker's land but allowed a flow in the opposite direction. Any accumulation of water was thus contained on the south side of the dam.

After the dam was built, water which flowed through the ditches on the Williams and Schifferdecker properties could no longer escape to the river but accumulated in the slough and backed up on Schifferdecker's land. Depending on the seasonal extent of rainfall, cultivation of substantial acreage on the Schifferdecker farm was precluded by wet ground attributable to water backed up in the slough. This suit for mandatory injunction followed refusal by Willis to remove the dam.

The pivotal question on this appeal presented in the several points briefed is whether the system of ditches created for the flow of water from the Williams and Schifferdecker properties into the slough and thence from the slough across the Willis land in ditches to the river was a watercourse which Willis could not obstruct. We conclude, as did the trial judge, that the drainage ditches and the slough conveyed surface water against which Willis was entitled to erect protection for his property.

■ In an exhaustive analysis of cases from various jurisdictions, this court concluded in *Camden Special Road District of Ray County v. Taylor*, 495 S.W.2d 93 (Mo. App.1973) that Missouri accepts the so-called modified "common enemy doctrine" as respects surface waters. Under this rule, every man is entitled to dam against surface water to ward it off his land even if, in so doing, he casts the water back upon his neighbor. The defending land owner may not, however, unnecessarily collect the water and discharge it at one place creating damage to the neighbor in the process. A commonly employed and approved method for defense against surface water is the construction of dams or dykes. The dam which Willis built and about which Schifferdecker complains was a legitimate defense of the Willis property if the water blocked in the slough was surface water.

Schifferdecker argues that the ditches and the slough constituted a natural watercourse and, were that to have been a fact established by the evidence, Willis would have been precluded, beyond question, from blocking its flow and ultimate discharge into the river. Review of the trial record discloses that there was no substantial evidence that any natural watercourse existed before construction of the drainage ditches and that the system was man-made in origin to accommodate seasonal conditions of runoff.

■ The reported cases have struggled to evolve a universally applicable definition of a natural watercourse. In *Happy v. Kenton*, 362 Mo. 1156, 247 S.W.2d 698 (1952), it was defined as a stream flowing in a partic-ular direction, not necessarily continuously, in a definite channel with normally a final discharge into another stream or body of water. In *Prichard v. Hink*, 574 S.W.2d 30 (Mo.App.1978), the court observed that a watercourse is more than drainage of surface water and that sloughs are not considered as watercourses when they merely receive water which has escaped from a nearby stream or which accumulates from backup water or surface water runoff. Ditches constructed to drain off surface waters are not themselves watercourses. *Senkevech v. Vaughn*, 610 S.W.2d 399 (Mo. App.1980).

The thread which connects the cases cited, and others addressing the same subject, is the concept that a natural watercourse must have established itself, without the intervention of human agency, as a conduit for the regular transfer of water and it must possess certain attributes of a permanent feature on the land. While all water from rainfall and melting snow, or from backwater in times of flood, must seek an outlet and some will run on the surface, it is only when that water reaches a channel having the attributes above mentioned that a watercourse is thereby established.

■ In the present case, only the slough was identified as being entirely natural in its origin and containing water or being wet land for significant periods of time. The slough and other topographic features of the area were the result of the rise and fall of the river before the dykes were constructed. Although the ditches excavated across the three properties of Williams, Schifferdecker and Willis were, understandably, located in low areas or swales, there was no evidence that a stream even discontinuously flowed through any bed or channel in a pattern before the ditches were constructed. Similarly, there was no evidence that the ditches after construction performed any function except to drain surface water and, from the north end of the slough, to drain the accumulated water there. The system was one of drainage ditches and was not a natural watercourse.

Schifferdecker relies in part on the holding in *Happy v. Kenton, supra,* a case in which a constructed drainage ditch was held to constitute a natural watercourse. The case is distinguishable on the facts from the subject case. In *Happy,* the watercourse provided a drainway from Snowden Lake to the Missouri River through which water flowed in a definite channel most of the year. Although construction work improved and enlarged the channel, a natural drainway from Snowden Lake to the river had existed in the same location before any construction was undertaken. The evidence in the present case did not establish comparable facts.

Also distinguishable is the case of *Borgmann v. Florissant Development Company,* 515 S.W.2d 189 (Mo.App.1974), which Schifferdecker cites. That case involved the discharge of surface water upon neighboring land and the complaint by the neighboring owner seeking to block the water flow. The case holds that natural drainways for surface waters may be used for collection and discharge of surface water upon adjoining land provided the natural capacity of the drainway is not exceeded. While the slough in the present case was undoubtedly a natural receptacle for receipt of surface water, evidence was lacking that the ditches into or out of the slough had any natural capacity before excavation to accomplish the drainage which Schifferdecker seeks to restore.

Final note must be made that Schifferdecker's claim for removal of the obstruction to the drainage system for the three properties was based solely on the entitlement of adjoining landowners to the free flow of a natural watercourse. No evidence established community of agreement preceding construction of the ditches as a joint enterprise benefiting the present owners or their predecessors in title. The case is therefore unlike *Dick v. Shannon,* 596 S.W.2d 79 (Mo.App.1980) and does not consider theories of equitable estoppel, an easement by prescription or a contract which has been performed.

The judgment is affirmed.

All concur.

SOMERVILLE, J., recused.