**M.H. SIEGFRIED REAL ESTATE,**
**Appellant,**

v.

**CITY OF INDEPENDENCE,**
**Missouri, Respondent.**

**No. 64470.**

Supreme Court of Missouri,
En Banc.

April 26, 1983.
Rehearing Denied May 31, 1983.

Steven M. Gray, Independence, for appellant.

Joe F. Willerth, Asst. City Atty., Independence, for respondent.

BLACKMAR, Judge.

This action involves the accumulation of surface water on land owned by the plaintiff corporation at the northeast corner of Truman Road, running east and west, and Turner Street, running north and south, in the City of Independence. The record contains only the testimony of Cedric Siegfried, a lawyer and president of the plaintiff corporation, and exhibits authenticated by him. Since the trial court sustained the defendant's motion to dismiss at the close of the plaintiff's case, we state the facts on the basis that the plaintiff's evidence is true.

The evidence does not show exactly when the plaintiff acquired the land in question, but the estimate is that it was purchased in parcels between 15 and 25 years ago. The streets were in place when the plaintiff became the owner. The evidence does not show when the streets were built, or whether they were built by the city, the county, the state, or a developer.

Siegfried became the chief executive officer of the plaintiff, a family corporation, about three years prior to the March, 1981 trial. He had not been active in the corporation in an executive capacity before then but had done legal work for it. He remembered that the grade of Truman Road was raised about 2 inches in 1967 or 1968 by blacktopping, and perhaps the grade of Turner Street was raised at the same time, but these operations did not contribute materially to the drainage problem inasmuch as the grade of the streets was already above lot level. The plaintiff's land is at the bottom of a steep slope and receives drainage from other land to the north. Turner Street, to the west, is about 11 to 15 inches above the level of plaintiff's lot and Truman Road, on the south, is 10 to 18 inches above the lot level. On four occasions during the past three years Siegfried saw water standing on the plaintiffs' land after heavy rains, and he entered into correspondence with the defendant city about possibilities for drainage. He was of the opinion that culverts under Turner Street, Truman Road, or Elizabeth Street, which is to the east and about 250 feet from the east boundary of plaintiff's tract, would suffice to carry most of the water off of the tract and into natural drainage channels.

The plaintiff undertook the construction of some houses on the tract in 1980, and claims that these are worth substantially less than they would have been if the drainage had been adequate. There was also expense in hauling in dirt to raise the foundation levels of the houses.

The amended petition complained of the interruption of natural drainage by the "improper and negligent construction and maintenance" of the streets, and sought injunction against continued interruption, a mandatory order for the installation of drainage expedients, and damages. The answer consisted of a general denial together with pleas of the statute of limitations, without specifying any statutory sections, and of laches.

The plaintiff rested its case after Siegfried testified. The trial court sustained the defendant's motion for judgment of dismissal pursuant to Supreme Court Rule 67.-02 on the grounds, first, that the statute of

limitations had run on a legal claim, thereby imposing the equitable bar of laches, and, second, that the record did not show that the defendant city was the agency responsible for the construction and maintenance of the streets. The plaintiffs appealed, claiming that the land flooded only occasionally, and that the statute of limitations therefore began anew as to each incident of flooding. *See Spain v. City of Cape Girardeau,* 484 S.W.2d 498, 503 (Mo.App.1972).

The Court of Appeals agreed with the plaintiff. It characterized the claim as one for "temporary nuisance," which could be corrected with reasonable effort, and so held that each new manifestation of damage gave rise to a new claim. The court therefore remanded the case with directions to enter judgment for the plaintiff as to liability and to hear evidence as to damage.

The defendant moved for rehearing, arguing that under Supreme Court Rule 67.02 it did not waive its right to introduce evidence by moving for dismissal at the close of the plaintiff's case. The court overruled the motion, holding that the defendant, by so moving, consented to the submission of the case on the plaintiff's evidence. It cited *Shepard v. Shepard,* 353 Mo. 1057, 186 S.W.2d 472, 477 (Mo.1945) and *Gates Rubber Co. v. Williford,* 530 S.W.2d 11, 15 (Mo. App.1975), but then transferred the case to this Court on its own motion because of the importance of the procedural question of the continued authority of the cases cited in view of Rule 67.02.

■ Most of the argument before us dealt with this procedural question. We nevertheless stand fully possessed of the case as though the original appeal had come here. We conclude, contrary to the Court of Appeals, that the trial court reached the correct result under the pleadings and evidence and therefore affirm the judgment. This makes it unnecessary to rule on the interesting and important procedural issue. Because of the importance of the point and the publicity it has received,[1] however, we

believe that two comments are in order, as follows: (1) Rule 67.02 clearly states that the filing of a motion to dismiss at the close of the plaintiff's case "does not constitute a waiver of the defendant's right to offer evidence," so that any case suggesting the contrary would seem to be ill-considered, and (2) trial judges should be very hesitant in sustaining such motions, and should consider the manifest advantage of hearing all evidence that any party wants to offer, so that a complete record may be assembled and further trial proceedings avoided in the event of reversal.

With these observations we turn to the merits. We conclude that the plaintiff's evidence does not demonstrate any act or omission on the defendant's part such as to give rise to legal liability. We do not need to go into the issues of statute of limitations and ownership of streets, which were the bases for the trial court's decision. We of course will affirm the judgment if we conclude that it is correct, even though our reasons are not the same as those which seemed persuasive to the court below.

The evidence shows, essentially, that someone built streets many years ago, long before the plaintiff corporation acquired its property. Siegfried testified that good engineering practice required that the streets be raised above .the level of the adjoining lots; otherwise streets would wash away. The streets have kept surface water from running off of the land, especially when the level of rainfall is high. There is no claim of interruption of a natural watercourse, and so the case of *Hewitt v. Chicago, Burlington and Quincy Railroad,* 426 S.W.2d 27 (Mo.1968), which is the only case cited by the plaintiff in support of its substantive claim, is not in point.[2] We have, indeed, had minimal assistance from counsel in the substantive aspects of the problem before us. There is absolutely no evidence that the city or any other agency caused water other than that which would have flowed naturally from the land above to accumulate on the plaintiff's land. The complaint,

---

1. *See* Missouri Bar, Courts and C.L.E. Bulletin, Vol. 17, No. 11 (Nov.1982).

2. *See Happy v. Kenton,* 362 Mo. 1156, 247 S.W.2d 698 (1952).

rather, is that whosoever had control of the lower land built that land up in the construction of streets so as to hold up water which otherwise would have flowed off of the land and that the city, in maintaining the streets, has failed to correct this situation.

The subject of surface water has concerned our Court for decades. In *Looney v. Hindman*, 649 S.W.2d 207 (Mo. banc 1983), we related some of the history, which need not be repeated. That case involved the rights of a lower owner with respect to an upper owner. This case involves the other side of the coin. Whoever built the streets was in the position of a lower owner. The sole complaint is that the streets keep water on the plaintiff's land which otherwise would have had an outlet. The plaintiff had the full opportunity to present evidence such as it deemed necessary, and there is no suggestion that it could establish any additional facts which would be helpful.

Our analysis starts with the seminal case of *Abbott v. Kansas City, St.J. & C.B. Railroad Company*, 83 Mo. 271, 289 (1884), in which the claim in the portion of the case here pertinent was that the plaintiff had had a verdict founded in part on an instruction reading as follows:

> That it was the duty of the defendant company to so construct its line of tracks as would permit the usual flow of the water, and that where, owing to embankments being constructed to dam up or stop such flow, and it fails to construct aad [sic] keep in good order the necessary culverts or other waterways as will pass through and carry off such water, it is liable to damages to all parties injured.

The court held that the instruction did not correctly state the law. It was apparently based on the decision in *Shane v. Kansas City, St.J. & C.B. Railroad Company*, 71 Mo. 237 (1879), a suit against a railroad which had built an embankment which diverted surface water onto the plaintiff's land. The *Shane* court purported to adopt the "civil law" view of surface water, under which a lower, or servient, owner has a duty to receive the surface water which naturally flows from the land of upper, or dominant, owners. The *Abbott* opinion completely rejected the civil law position,[3] in favor of what the court deemed to be the "common law" rule, which is often described as the "common enemy" doctrine. The instruction then was held to be erroneous.[4]

We have been unable to find a case since *Abbott* which has imposed liability on a lower owner for obstructing the flow of water from upper owners. Cases from this Court are *Goll v. Chicago and A. Railroad Co.*, 271 Mo. 655, 197 S.W. 244 (1917) and *Anderson v. Inter-River Drainage and Levee District*, 309 Mo. 189, 274 S.W. 448 (Mo.1925).[5] The Court of Appeals cases have also been consistent. See *Schneider v. Missouri Pacific Railway Co.*, 29 Mo.App. 68 (1888); *Mehonray v. Foster*, 132 Mo.App. 229, 111 S.W. 882 (1908); *Camden Special Road District v. Taylor*, 495 S.W.2d 93 (Mo. App.1973), *Schifferdecker v. Willis*, 621 S.W.2d 65 (Mo.App.1981). See also Snodgrass and Davis, "The Law of Surface Water in Missouri," 24 Mo.L.Rev. 137, 281, 283 & nn. 162–64, 295–98 (1959). The bare obstruction of the flow of surface water by a lower owner has not been found to be an

**3.** The *Abbott* opinion indicated that the *Shane* result might be supportable on the basis that the case involved a natural waterway rather than surface water. See 83 Mo. at 287. The Missouri courts, since *Abbott*, have consistently distinguished between the obstruction of a natural watercourse and the impeding of the flow of surface water. See Note 2, *supra*; *Schifferdecker v. Willis*, 621 S.W.2d 65 (Mo. App.1981).

**4.** We sympathize with Circuit Judge S.H. Woodson, who apparently paid careful atten-

tion to our slip opinions and tried to follow the latest controlling authorities.

**5.** These two cases involved the assertion that embankments or levees impeded the flow of flood waters so that the waters reached points on the opposite bank which they would not have reached but for the obstruction. The court concluded in each case, contrary to the holding in some jurisdictions, that flood waters were to be treated as surface water, and, after so holding, found that the cases were controlled by *Abbott*.

occasion for liability, even though the effect on the upper owner would be highly predictable. Nor have the courts inquired into the abstract reasonableness of the lower owners' conduct.

■ The Court of Appeals cited several cases in support of its holding that the plaintiff's evidence established a claim. In all of these the plaintiffs asserted that surface water which would not otherwise have come onto the plaintiff's land was collected from other properties and discharged in destructive quantities, which is a recognized ground for liability. See discussion in *Looney, supra*. In *Kelly v. City of Cape Girardeau*, 260 S.W. 801 (Mo.App.1924), 284 S.W. 521 (Mo.App.1926), and 227 Mo.App. 730, 60 S.W.2d 84 (Mo.App.1933), the plaintiff's contention during the whole of the lengthy controversy was that the city "caused the surface waters which fell during hard rains to be gathered and cast upon the plaintiff's lots." *Lewis v. City of Springfield*, 142 Mo.App. 84, 125 S.W. 824 (1910), *Sandy v. City of St. Joseph*, 142 Mo.App. 330, 126 S.W. 989 (1910) and *Bodam v. City of New Hampton*, 290 S.W. 621 (Mo.App.1927) all involve the collection of surface water and discharge in destructive quantities. *Clark v. City of Springfield*, 241 S.W.2d 100 (Mo. App.1951), involved discharge of raw sewage in addition to surface waters and thereby introduced an additional form of invasion of the plaintiff's property. In contrast to the Court of Appeals, we believe that the case of *Schifferdecker v. Willis*, 621 S.W.2d 65 (Mo.App.1981), holding that a landowner may erect a dam so as to interrupt the flow of water in a drainage ditch which is not a natural watercourse, thereby keeping surface waters off of his land, is closer to the present situation than the cases that court relies on. We are aware of no Missouri case, at least following the adoption of the common enemy rule in 1884, which has sustained the imposition of liability for impeding the flow of surface water, when no water is brought upon the plaintiff's land which would not otherwise have flowed there.

■ *Abbott* recognizes that there is a duty of due care with regard to the diversion or impeding of the flow of surface water, and this proposition is reiterated in subsequent cases. The cases give us no guidance, however, as to what acts or omissions on the part of a lower owner may be found to be negligent. Negligence possibly might be based on carelessness during construction, or on the use of a dangerous process or method when a more secure one is available, but these possibilities are foreign to the record before us. Nor is there any support in the case law for giving court or jury a roving commission to determine whether the lower owner's conduct is "unreasonable." *Camden Special Road District v. Taylor, supra*, and *Schifferdecker v. Willis, supra*, are the latest cases in this area, and they appear to be in line with prior holdings involving similar facts. *Camden* holds, emphatically, that the mere construction of a dam cannot be found to be negligent, even though flooding of the upper lands can be foreseen. The same case holds, just as *Abbott* does, that there is no duty to build a culvert. Nor can we find any authority for requiring a city to construct culverts when it assumes maintenance of streets built by others.[6]

■ The plaintiff had the full opportunity to present its evidence. Siegfried admitted that there was no negligence in the construction of the streets. His only complaint is that there was negligence, in his view, in maintaining the streets without culverts. We seriously question the trial judge's conclusion that there was no proof that the city had accepted the streets in question. The testimony of the grading in 1967 and 1968 would seem to be sufficient, in the absence of an explanation which the city is in by far the best position to make.

6. *Haferkamp v. City of Rock Hill*, 316 S.W.2d 620 (Mo.1958), holds that a city may be liable, if a proper case is pleaded and proved, when it accepts and assumes the maintenance of streets built by a developer. Here, however, we find no basis for liability.

But this circumstance does not give rise to liability for failing to install culverts.[7]

It is, of course, our duty to reexamine the state of the law, as cases come to us. There might be an anomaly in a rule which may place substantial restrictions on upper owners in ridding their land of surface water, while affording almost unlimited freedom to lower owners in backing the water up, but we do not perceive any general trend in Missouri or elsewhere toward abandonment of the "common enemy" rule in favor of some other concept such as a "reasonable use" doctrine. See Comment, "The Application of Surface Water Rules in Urban Areas," 42 Mo.L.Rev. 76, 79–80 (1977), indicating that some courts which had previously adopted the civil law position, which might permit this plaintiff a recovery, have later elected to apply the common enemy doctrine, rather than their prevailing civil law rule, when urban land is involved. The parties have not asked us to undertake a reevaluation of the current state of the law in this area, and we do not believe that this case is an appropriate vehicle for doing so.

Inasmuch as the plaintiff's evidence does not establish liability we do not need to analyze the defenses of the statute of limitations and laches. We observe, however, that the evidence indicates that this land was in substantially the same condition when the plaintiff acquired it as it is now. The state of the drainage must have been apparent to any prospective purchaser, just as it is presently apparent, according to Siegfried's testimony, to appraisers for lending institutions. This suggests permanence, which would indicate, at most, a one-time claim belonging to the initial owner. Spain, supra at 503. There would be a serious problem if a person could purchase low-lying lands with surface waters held in by graded streets, and then demand, years later, that the public authorities provide drainage at public expense, or, alternatively, pay damages every time it rains heavily. The defenses of laches and the statute of limitations exist to inhibit claims of this kind.[8] But, inasmuch the facts were not fully developed, we rest our conclusion on the elements of the plaintiff's claim, rather than on possible defenses.

The dissent cites language from numerous cases, in arguing that there is no rational distinction between upper owners and lower owners. The cases actually involving lower owners, however, show remarkable consistency since 1884. We decide only the case before us. We do not foreclose the possibility that some future upper owner might be able to demonstrate actionable negligence or unreasonable conduct on the part of a lower owner.

We are not unmindful of the plaintiff's problem in having land without drainage. The defendant at one time offered to make the ditches available if the plaintiff would pay for the pipe, but the offer apparently was not received with any enthusiasm. We adjudicate nothing as to whether one in the plaintiff's position would be entitled to relief of this kind, if actively pursued. We share the trial judge's hope that the parties will cooperate so that drainage may be made available and optimum use made of the land. On the present record, however, we are persuaded that the judgment is correct, and it is affirmed.

GUNN, J., concurs.

RENDLEN, C.J., and BILLINGS, J., concur in result.

HIGGINS, J., dissents in separate opinion filed.

---

7. *Abbott* expressly mentioned culverts, and held that there was no duty to provide them. A culvert might itself furnish the occasion for liability if it operated so as to collect water from a large area and discharge it at a single point. *See Hawkins v. Burlington Northern, Inc.,* 514 S.W.2d 593, 600–1 (Mo. banc 1974).

8. We agree with plaintiff and with the trial court that the defendant should have cited the statutory sections relied upon, when pleading the statute of limitations.

WELLIVER and DONNELLY, JJ., dissent and concur in separate dissenting opinion of HIGGINS, J.

HIGGINS, Judge, dissenting.

Plaintiff claims its property was damaged because a road maintained by the City of Independence dammed the natural flow of surface water from its property causing the water to back up onto the property. The question is whether Missouri's surface water rules prevent plaintiff's recovery. Essential to the resolution of this question is a determination of which surface water rule or rules are followed in Missouri.

Three principal rules regarding surface water are prevalent today: the civil law rule; the common enemy rule; and the reasonable use rule. The civil law rule holds one who interferes with the natural flow of surface water liable for damage caused to other landowners. The common enemy rule allows a landowner to divert surface water from his property regardless of the harm this could bring to others. The reasonable use rule holds a landowner's liability for diversion of surface water depends on the reasonableness of his actions. *See* 78 Am.Jur.2d § 119 (1975).

Most jurisdictions, including Missouri, have modified the surface water rule they have chosen to adopt. *See* Kinyon & McClure, *Interferences with Surface Waters,* 24 Min.L.Rev. 891, 913–35 (1940); Beck, The Law of Drainage, 5 Waters and Water Rights 491–98 (R. Clark ed. 1972).

In 1884, Missouri rejected the civil law rule and adopted a modified common enemy rule. *Abbott v. K.C., St.J. & C.B. R.R.,* 83 Mo. 271 (1884). In adopting this rule, the Court noted that Missouri did not follow the common enemy rule in its harshest form, but rather imposed the duties of reasonable use and due care upon landowners who would divert surface water onto coterminous or adjacent land. *Abbott,* 83 Mo. at 282–86 (quoting with approval *Hosher v. K.C., St.J. & C.B. R.R.,* 60 Mo. 329, 333 (1875); *McCormick v. K.C., St.J. & C.B. R.R.,* 57 Mo. 433, 437 (1871).[1] The Court noted the rule "permits and encourages public and private improvements, and at the same time restrains those engaged in such enterprises from unnecessarily or carelessly injuring another." *Id.* at 286. Thus, the Court adopted a modified common enemy rule which allows a landowner in the reasonable use and development of his property to divert surface water so long as he does not unnecessarily inconvenience or damage a coterminous landowner. *Anderson v. Inter-River Drainage and Levee Dist.,* 309 Mo. 189, 211, 274 S.W. 448, 453–54 (Mo.1925); *Goll v. Chicago & A. Ry. Co.,* 271 Mo. 655, 665–66, 197 S.W. 244, 246–47 (Mo. 1917); *Abbott,* 83 Mo. at 282–86.

Subsequent decisions recognized a second rule regarding the collection and discharge of surface water. *See, e.g., Keener v. Sharp,* 341 Mo. 1192, 111 S.W.2d 118, 120 (1937) (surface water is a common enemy and may be diverted to adjacent or lower land provided not unnecessarily collected and discharged to damage of neighbor); *Clark v. City of Springfield,* 241 S.W.2d 100, 105 (Mo.App.1951) (cannot artificially impound or collect surface water then discharge in increased, destructive quantity); *Polich v. Hermann,* 219 S.W.2d 849, 855 (1949) (cannot collect and discharge into artificial channel or volume or in unnatural quantities to substantial injury of other land). In *Haferkamp v. City of Rock Hill,* 316 S.W.2d 620 (Mo.1958), the Court noted these cases and held:

> We need not attempt here to reconcile these various statements, but it is sufficient to note that the language used

---

1. The majority of cases recite that the common enemy rule was adopted in *Abbott.* In fact, the rule was recognized earlier. The *Abbott* Court specifically overruled two prior decisions which had attempted to recognize the civil law rule holding "we feel constrained to recognize the common law doctrine on this subject so often and repeatedly approved by this court, without division, in all its earlier and later decisions, as still the law in this state...." *Abbott,* 83 Mo. at 285–86.

clearly indicates that it was never intended that the volume and flow of surface water onto neighboring property could not be increased or accelerated under any circumstance. In those states purporting to follow the common enemy doctrine, where the question of the right of a landowner to collect surface water and discharge it into a natural drainway has been expressly raised, the courts "have developed a qualifying rule which is, in substance, that a possessor of land is not privileged to discharge upon adjoining land, by artificial means, large quantities of surface water in a concentrated flow *otherwise than through natural drainways*" (citations omitted). The statement of this general qualifying rule varies in the numerous cases, and without attempting to state precisely its limits it may be said that the rule is, in substance, that a landowner in the reasonable use and development of his land may drain it by building thereon sewers, gutters and such other artificial water channels for the purpose of carrying off the surface waters into a "natural surface-water channel" (citation omitted) located on his property without liability to the owner of neighboring land, even though such method of ridding his property of surface water accelerates and increases the flow thereof, provided that he acts without negligence, and provided further that he does not exceed the natural capacity of the drainway to the damage of neighboring property.

*Haferkamp,* 316 S.W.2d at 625–26. In short, the *Haferkamp* rule allows a land-

owner in the reasonable use and development of his land, to artificially collect and discharge surface water into a "natural surface water channel" although this increases the flow of surface water on neighboring property, provided he acts without negligence and does not exceed the natural capacity of the natural drainway to the damage of his neighbor. The language of the Court indicates this rule applies only to situations where a landowner artificially collects and discharges surface water. The opinion does not review or change the rule in *Abbott,* but rather sets out an additional rule to be applied in situations similar to that presented in *Haferkamp.*

Confusion developed following *Haferkamp* regarding application of surface water rules which was "the result of semantics and the failure to distinguish the different methods employed by landowners to rid themselves of the 'common enemy'." *Borgmann v. Florissant Development Co.,* 515 S.W.2d 189, 195 (Mo.App.1974); *e.g., Schifferdecker v. Willis,* 621 S.W.2d 65 (Mo.App. 1981) (where court confuses the *Abbott* rule with the *Haferkamp* rule, stating that every man may dam against water so long as he does not collect and discharge unnecessarily, relying on *Camden Special Road Dist. of Ray County v. Taylor,* 495 S.W.2d 93, 98–99 (Mo.App.1973) where reasonable use requirement in *Abbott* was held applicable only in collection and discharge cases).[2] Despite this confusion, the rule established in *Abbott* has been consistently recognized by the courts. *E.g., Roberts v.*

**2.** This statement of the rule is incorrect in that it refers to the *Haferkamp* rule as the "modified common enemy doctrine as respects surface water." This misstatement is the result of the confusion noted above. The *Schifferdecker* Court relied on *Camden,* 495 S.W.2d at 93. The *Camden* court misconstrued *Haferkamp,* 316 S.W.2d at 620, and held the reasonable use and due care language in *Abbott* was applicable only in collection and discharge cases. *Camden,* 495 S.W.2d at 98. The *Camden* court's restriction is incorrect for two reasons. First, the *Haferkamp* Court addressed only a collection and discharge fact situation. The Court noted a variety of statements regarding

surface water including "the rights given under the 'common enemy' doctrine, must be exercised within reasonable limits and not recklessly, so as not to needlessly injure servient tenements [citations omitted]" and went on to hold: "We need not attempt here to reconcile these various statements, but it is sufficient to note that the language used clearly indicates that it was never intended that the volume and flow of surface water onto neighboring property could not be increased or accelerated under any circumstance." *Haferkamp,* 316 S.W.2d at 625. The *Haferkamp* Court in no way restricted the *Abbott* rule. Second, the *Abbott* Court was neither faced with, nor attempted to set out, a

*Hocker,* 610 S.W.2d 321, 326–27 (Mo.App. 1980) (diversion allowed only upon exercise of due care and prudence); *Minton v. Steakley,* 466 S.W.2d 441, 444 (Mo.App. 1971) (unreasonable interference with drainage required); *Reutner v. Vouga,* 367 S.W.2d 34, 41 (Mo.App.1963) ("rights exercised under 'common enemy' doctrine must be exercised within reasonable limits and not recklessly, so as not to needlessly injure the servient tenements..."). *See also Young v. Moore,* 241 Mo.App. 436, 236 S.W.2d 740, 744 (Mo.App.1951).

This Court has applied surface water rules three times in the last ten years. In *Wells v. State Highway Comm'n,* 503 S.W.2d 689 (Mo.1973), the Court was faced with an artificial collection and discharge situation but noted "the authorities require that one must act within reasonable limits and not recklessly, in the development of his land, before they give him the benefit of the 'common enemy doctrine' which has become a part of our rule on surface waters." *Wells,* 503 S.W.2d at 692. The Court went on to apply the rule applicable to situations involving the artificial collection and discharge of surface water as articulated in *Haferkamp. Wells,* 503 S.W.2d at 692–93. In *Miller Land Co. v. Liberty Township,* 510 S.W.2d 473 (Mo. banc 1974), the plaintiff sought a mandatory injunction requiring the township to remove old drain tile and repair an abandoned railroad bed in order to correct surface water drainage problems. The Court denied relief and noted the common enemy doctrine allowed diversion of water onto a servient estate provided it was done with reasonable limits. Further, the Court noted a possessor of land was not privileged to artificially collect and discharge surface water in destructive quantities. *Miller Land Co.,* 510 S.W.2d at 476

(citing *Haferkamp,* 316 S.W.2d at 620). In *Hawkins v. Burlington Northern, Inc.,* 514 S.W.2d 593 (Mo. banc 1974), the Court considered an action in trespass and nuisance against the railroad based on flooding of land caused by defendant's construction of a culvert. The Court applied the rule in *Haferkamp* in affirming a judgment for plaintiff noting the rule was either an exception to, or a modification of, the common enemy rule.

As noted earlier the common enemy rule allows diversion of surface water despite resulting injury to coterminous landowners. From an analysis of Missouri surface water cases it becomes clear that two surface water rules have evolved from this harsh doctrine. The first was noted in *Abbott,* where the Court held a landowner in the reasonable use or development of his land could divert surface water onto coterminous or adjacent land but in so doing must use due care so as not to unnecessarily inconvenience or damage a coterminous landowner. *Abbott,* 83 Mo. at 282–86. The second rule is articulated in *Haferkamp* where the Court held one could not artificially collect and discharge surface water in destructive quantities.[3]

The principal opinion ignores both surface water rules established in Missouri and applies the common enemy rule in its harshest form to the situation in this case. Adopting such a rule flies in the face of over one hundred years of case law. The courts of this state have consistently rejected application of the common enemy rule in its harshest form in favor of more moderate surface water rules. *See* Comment, *The Application of Surface Water Rules in Urban Areas,* 42 Mo.L.Rev. 76, 79–80 (1977). The principal opinion reasons that since no

rule for collection and discharge situations. To limit the holding of a case to a fact situation not addressed by the Court is illogical.

**3.** Acceptance of the *Haferkamp* rule as independent of the common enemy rule is dictated by logic. Surface water by definition is water in a natural, diffused state. Clark, Water and

Water Rights at § 52.1(A). Once water is artificially collected one cannot say it is in a "natural, diffused state." Because the common enemy rule is applicable only to surface water cases, *see Roberts v. Hocker,* 610 S.W.2d 321, 327 n. 5 (Mo.App.1980), it should not be applied to collection and discharge cases.

prior case has held "downhill" landowners liable for damages caused by their diversion of surface water onto property situated "uphill", the current surface water rules are inapplicable. *Siegfried v. City of Independence*, 649 S.W.2d 893, 897 (Mo. banc 1983).

Although most reported surface water cases involve situations wherein one party was specifically engaged in a drainage or diversion project, it is clear that surface water rules apply in situations where either a municipal corporation or a private person has occupied or improved land "either by grading or filling up low places, or by erecting buildings thereon, or by making any other improvement thereon to make it fit for cultivation, or other profitable or desirable enjoyment." *Abbott*, 83 Mo. at 282–83. Whether plaintiff is situated "uphill" or "downhill" is irrelevant as far as application of the surface water rules. Case law and logic dictate that the surface water rules apply to coterminous landowners; not merely to "uphill" landowners. In *Abbott*, plaintiff's land was situated above defendant's railroad bed. Following rains a nearby creek would flood plaintiff's land.[4] Defendant's roadbed created a damming effect and prevented surface water from returning to the stream. The Court applied the modified common enemy rule to defendant although plaintiff's land lay "uphill" from defendant's roadbed. *Abbott*, 83 Mo. at 282–86. In *Goll v. Chicago & A. Ry. Co.*, 271 Mo. 655, 197 S.W. 244 (Mo.1917), the Court noted:

> A coterminous proprietor may change the situation or surface of his land, by raising or filling it to a higher grade, by the construction of dikes, the erection of structures, or by other improvements which cause water to accumulate from natural causes on adjacent land and prevent it from passing off over the surface.

*Goll*, 197 S.W. at 246. The Court went on to apply the *Abbott* rule in denying plaintiff relief although plaintiff's land was situated "uphill" from that of the defendant. The Court stated the *Abbott* rule was applicable to "coterminous" or "adjacent" landowners. Similarly, in *Anderson v. Inter-River Drainage and Levee Dist.*, 309 Mo. 189, 274 S.W. 448 (Mo.1925), the Court was faced with a situation where defendant had constructed a levee which caused surface water to back up on plaintiff's land. Although plaintiff's land lay "uphill" from defendant's levee, the Court applied the *Abbott* rule. Plaintiff's recovery was denied not because of the location of his land, but rather because plaintiff did not charge defendant with violating the *Abbott* rule. *Anderson*, 274 S.W. at 454. Thus in both Supreme Court cases where plaintiff's land has been situated "uphill" from defendant's, the Court has applied the *Abbott* rule.

The principal opinion relies on *Schifferdecker v. Willis*, 621 S.W.2d 65 (Mo.App. 1981), for the proposition that a "downhill" landowner has the unqualified right to dam against surface water. *Schifferdecker*, however, is a collection and discharge case which required application of the *Haferkamp* rule; therefore its holding has no application to the fact situation presented here.

In *Schifferdecker*, drainage ditches had been excavated across the parties' land. They were designed to collect and discharge surface water through a slough, then drain into the Missouri river. Defendant built a dam across approximately one-half of the slough which was situated on his land. This caused the increased volume of water from the adjoining land which drained into the slough to back up on plaintiff's land. The Court held:

> Missouri accepts the so-called modified "common enemy doctrine" as respects surface waters. Under this rule, every man is entitled to dam against surface water to ward it off his land even if, in so doing, he casts the water back upon his

4. Flood waters or "overflow" waters have been consistently construed as surface water requiring application of surface water rules. *See Goll*, 197 S.W. at 246.

neighbor. The defending land owner may not, however, unnecessarily collect the water and discharge it at one place creating damage to the neighbor in the process.

*Schifferdecker,* 621 S.W.2d at 67. The collection and discharge language indicates the Court was attempting to apply the *Haferkamp* rule, although it is misstated. *See supra* discussion in text and accompanying notes at 900–901.

In the present case plaintiff's petition states a case under theories of negligence, nuisance, trespass, or condemnation without compensation; and in the state of this record it may not be said that plaintiff failed to make a prima facie case on one or more of these theories. *See Hawkins v. Burlington Northern, Inc.,* 514 S.W.2d 593, 599 (Mo. banc 1974); *Corrington v. Kalicak,* 319 S.W.2d 888, 892–93 (Mo.App.1959). The principal opinion would affirm the trial court's judgment for defendant on an application of the old common enemy rule. Nowhere in the principal opinion, the trial court judgment, or the record is it indicated that defendant's use of its property was reasonable and did not unnecessarily interfere with or damage plaintiff's property. *Abbott,* 83 Mo. at 282–86. The result reached by the principal opinion would only add confusion to an already confused area of law. The facts as stated indicate the defendant's use of its land may have been unreasonable in that it unnecessarily interfered with plaintiff's land and caused damage thereto. Defendant's use of the land in such a manner would preclude application of the common enemy rule and may make defendant liable for damages. Whether the common enemy rule will preclude plaintiff's recovery is still at issue, and the defendant must be allowed to present evidence whether it diverted the natural flow of surface water from plaintiff's land in an unreasonable manner so as to cause unnecessary interference with or damage to plaintiff's land. Sup.Ct.R. 67.02. I would reverse the judgment and remand the cause for a new trial.