John and Leatha HAITH, Appellants,

v.

ATCHISON COUNTY,
Missouri, Respondent,

and

Tom and Cora McEnaney, Respondents.

No. WD 42124.

Missouri Court of Appeals,
Western District.

June 19, 1990.

Jefferson G. Broady, Rock Port, Scott W. Ross, Maryville, for appellants.

Donald Eugene Reynolds, Rock Port, for Atchison County, Mo.

John F. Burns, St. Joseph, for Tom McEnaney.

Frank H. Strong, Maryville, for Cora McEnaney.

Before TURNAGE, P.J., and LOWENSTEIN and GAITAN, JJ.

LOWENSTEIN, Judge.

This appeal concerns a dispute between two adjoining landowners over control of water flowing over their agricultural land. Both sides asked for injunctive and monetary relief in this case tried to the court. Atchison County has not appealed nor did they file a respondent's brief. In order to make any sense of this controversy, a rough map is attached—the reader is directed particularly to the: 1) conservation ditch, 2) willow filled ditch, 3) southwest ditch, 4) the berms along the southwest portions of the McEnaney property, and 5) the dam on Deadman's Creek.

The McEnaneys and Haiths own farms in Atchison County. The farms lie side by side and have the Tarkio River as their southern boundary. The dispute arises from: 1) a conservation ditch which runs north and south the length of the Haiths' property; 2) the southwest ditch which runs from the southwest corner of the McEnaneys' property to the conservation ditch located on the Haiths' property; 3) Deadman's Creek which runs southeast across the McEnaneys' property; and 4) the willow filled ditch which runs east and west from the corner of the county road across the McEnaneys' property to Deadman's Creek.

Farm ground in and around Atchison County is highly erodible, and portions of both the Haith and McEnaney farms lie within a flood hazard zone. In addition, to the northwest of the Haith property there are hills which cause runoff.

Atchison County maintains a road which runs east and west along the north property line of the Haith farm. At the northeast corner of the Haith farm, the road turns to the north forming the west boundary of the McEnaney farm. When the McEnaneys moved onto their farm, there existed at the corner of the road a plank structure which served as drainage for water from the Redding farm. In approximately 1945, as the road built up, the township installed a drainage tube under the road at the corner. Later, the McEnaneys cut a ditch from that corner due east to Deadman's Creek. This ditch is referred to as the willow filled ditch.

Deadman's Creek flows in a generally southeasterly direction under the north-south portion of the county road and through the central part of the McEnaney farm until it deposits into the Tarkio River. Where the creek flows under the county road, there is a bridge maintained by Atchison County. By 1972, Deadman's Creek had begun to run so violently as to erode support from under the headwall of the bridge. In addressing the problem, the county engineer proposed to place a tube in Deadman's Creek downstream from the bridge on the McEnaney farm. The tube

was meant to slow water flow in the creek, allowing it to deposit sediment once again around the headwall of the bridge. The county supplied a 48 inch tube to the McEnaneys who installed it in Deadman's Creek, constructed an earthen dam with a spillway to the east of the tube, and erected a berm from the dam to the roadway corner.

The Haiths' predecessor in title, Ralph Roberts, installed the conservation ditch which ran from a point approximately 1200 feet west of the corner of the county road south. The ditch was installed by Phillip Mathers and was tied to another ditch constructed on property to the south of the Haiths. The drainway had been there since the 1940's. When installing the ditch, Mr. Mathers observed another ditch which ran from the southwest corner of the McEnaneys' farm southwesterly on the Haith property to the conservation ditch. This ditch is referred to as the southwest ditch and its purpose is to drain the corner of the McEnaneys' southwest field.

In the spring of 1984, the Haiths complained to the county commission that water was running over the county road onto their property. The road supervisor recommended raising the road and installing two new tubes under it, one at the corner where a tube had previously been placed and one at the north end of the Haith conservation ditch. In June, 1985, the county installed a new tube at the corner but before the tube at the north end of the conservation ditch could be installed, the Haiths stopped the project.

In the spring of 1986, the Haiths constructed an earthen berm eighteen to twenty four inches high in the fence on the west and south side of the McEnaneys' farm. Mr. McEnaney claims the berm caused water to stand in his southwest field.

The Haiths filed this suit requesting an injunction to force the McEnaneys to remove the dam from Deadman's Creek. In addition, they asked for monetary damages claiming the dam caused water to overflow onto their land thereby diminishing crop production. They also sought to force their neighbors to maintain the willow

filled ditch. The McEnaneys filed a counter-claim requesting the Haiths lower the inlet of the conservation ditch to allow more water from the north to flow onto their land and to remove the berms located on the south and west boundary of the McEnaneys' property. They also requested monetary damages for the flooding of their southwest field directly related to construction of the berms.

In the decree the court found neither party adduced enough evidence to sustain an award of monetary damages. Nevertheless, it granted injunctive relief requiring: 1) Atchison County install a drainage tube under the county road at the north end of the Haiths' conservation ditch so that no less than 40% and no more than 60% of the water on the Redding property flow under the roadway; 2) the Haiths remove or alter the earthen berm so that water from the southwest corner of the McEnaneys' farm is allowed to flow to the Haiths' conservation ditch; and 3) the McEnaneys either increase the size of the tube in Deadman's Creek or enlarge the spillway on the east side of the dam so that waterflow resulting from a 50–year rain event will not be impeded.

On appeal, neither party disputes that part of the order which finds no monetary damages. However, the Haiths appeal the injunctive relief given challenging the trial court's finding that the southwest ditch and the conservation ditch are watercourses. Also challenged is the court's decision to allow the dam which obstructs Deadman's Creek to remain with only minor modifications. Finally, the Haiths challenge that part of the order which places no duty on the McEnaneys to clear the willow filled ditch of debris.

Review of this case is pursuant to *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976); *Pollock v. Rose*, 708 S.W.2d 218, 219 (Mo.App.1986). Determinations of fact by the trial court shall not be overturned if they rest upon substantial evidence. *Schifferdecker v. Willis*, 621 S.W.2d 65, 67 (Mo. App.1981); *Roberts v. Hocker*, 610 S.W.2d 321, 327 (Mo.App.1980).

The pivotal question which will control the outcome of the Haiths' first and second points on appeal is whether the conservation and southwest ditches are watercourses which could not be obstructed, or whether they act as mere conduits for surface water drainage.

■ Missouri follows the modified "common enemy doctrine" in respect to surface waters. Under this rule, "each landowner has an unqualified right, by operations on his own land, to fend off surface waters as he sees fit without being required to take into account the consequences to other landowners, who have the duty and right to protect themselves as best they can." *Haferkamp v. City of Rock Hill*, 316 S.W.2d 620, 625 (Mo.1958); *Darst v. Metro. St. Louis Sewer Dist.*, 757 S.W.2d 270, 275 (Mo.App.1988); *Pollock*, supra, at 219; *M.H. Siegfried R. Est. v. City of Independence*, 649 S.W.2d 893, 896–97 (Mo. banc 1983); *Looney v. Hindman*, 649 S.W.2d 207, 210–11 (Mo. banc 1983); *Schifferdecker*, supra, at 67; *Camden Special Road Dist. of Ray County v. Taylor*, 495 S.W.2d 93, 97 (Mo.App.1973); *Happy v. Kenton*, 247 S.W.2d 698, 700 (Mo.1952). However, a landowner is not protected if he unnecessarily collects water and discharges it at one place creating damage to his neighbor in the process. *Pollock*, supra, at 219; *Camden*, supra, at 98; *Haferkamp*, supra, at 625. A common method for defense against surface water is the construction of dams, dikes or berms. *Schifferdecker*, supra, at 67. The berms which the Haiths built around the southwest corner of the McEnaneys' property, plus the natural obstruction of the county road to the north blocking the Reddings' property water, are both legitimate defenses of the Haith property if the water blocked is surface water and not considered a natural watercourse.

■ A natural watercourse is a "living stream of water with well defined banks, and a channel and bed. Such a stream to be a watercourse need not run continuously, *but it must be fed from other and more permanent sources than mere surface water.*" *Roberts*, supra, at 326. "It does not include the water flowing in the

hollows or ravines in land, which is the mere surface water from rain or melting snow, and is discharged through them from a higher to a lower level, but which at other times are destitute of water. Such hollows or ravines are not in legal contemplation watercourses." *Happy*, supra, at 701. Nor are ditches constructed to drain off surface water themselves watercourses. *Schifferdecker*, supra, at 67.

■ In the present case, the record is void of any evidence that either of the two ditches in question were watercourses. There is no evidence which would even support an inference that the ditches were fed by any source other than surface water. The McEnaneys contend the testimony of Robert Crabtree, an engineer, supports the trial court's conclusion. However, Mr. Crabtree's testimony dealt only with the contours of the ground and not the origin of the water which ran through the area. The mere fact that ditches exist and that water flows downhill is not enough in itself to conclude a watercourse exists. *Roberts*, supra, at 326, note 4. The mere "incidence of a channel for the surface water ... does not establish a watercourse." *Id.* There must be evidence that such a ditch is fed by a permanent source of water. *Roberts*, supra, at 326. Such evidence is lacking.

Moreover, the McEnaneys' counter-claim itself is an admission that the water flowing through the conservation and southwest ditches is surface water. The counter-claim states:

The natural drainage of *surface water* ... is into a drainage ditch located on Plaintiffs' lands....

\* \* \* \* \* \*

That in 1987, Plaintiffs or Plaintiffs' agents raised the level of the inlet or mouth of the drainage ditch ... thereby causing a majority of the *surface water* coming off the land north of Plaintiffs' property to be diverted ... onto Defendants' property....

\* \* \* \* \* \*

In 1986, Plaintiffs or Plaintiffs' agents constructed berms ... [and] the con-

struction of such berms has interfered with the natural drainage of *surface water* from Defendants' lands, causing such *surface waters* to accumulate on Defendants' land.... (Emphasis added)

Such language is an admission that the water in dispute is merely surface water and not water flowing through a natural watercourse. *Dillman v. Mullins*, 786 S.W.2d 608, 610 (Mo.App.1990); *Manahan v. Watson*, 655 S.W.2d 807, 809 (Mo.App. 1983); *Mitchell Eng., Div. of Ceco v. Summit Realty*, 647 S.W.2d 130, 141 (Mo.App. 1982).

In addition, although the trial court in its order refers to both the conservation and southwest ditches as watercourses, it uses the term "surface water" no less than four times in describing the water on the Redding and McEnaney properties:

*Surface water* ... collects on the property referred to at trial as the Redding Farm....

\* \* \* \* \* \*

Plaintiffs Haith will either remove or alter the earthen dike constructed by them so that ... *surface water* from the southwest corner of the McEnaney farm is allowed to flow ... to the Haith conservation ditch. (Emphasis added)

In sum, there was no substantial evidence to support the trial court's finding that the conservation and southwest ditches were watercourses. Therefore, the injunctive relief granted, 1) that a tube be placed at the north end of the conservation ditch under the county road, and 2) that the Haiths remove or alter the berms at the southwest corner of the McEnaney property, is erroneous and reversed.

The Haiths next contend the trial court erred when it did not order the removal of the dam obstructing Deadman's Creek, but only required the McEnaneys to either increase the size of the tube or enlarge the spillway so that waterflow resulting from a 50–year rain event will not be impeded.

■ Neither party challenges the court's finding that Deadman's Creek is a natural watercourse. Therefore, the controlling rule of law is that "any obstruction of the

flow of water in a natural watercourse, *resulting in injury to another person,* furnishes such person a right of action...." (Emphasis added). *Kelso v. C.B.K. Agronomics, Inc.,* 510 S.W.2d 709, 719 (Mo.App.1974); *Darst,* supra at 274; *Happy,* supra, at 700. In other words, there must be a link connecting the obstruction to the resulting injury. In the present case, the court's finding that no such causation existed was supported by substantial evidence.

■ The evidence the Haiths espouse to prove causation is the flooding of 1984 and 1987, which they contend was caused by the damming of Deadman's Creek. However, there was opposing testimony those floods were in fact caused by unusually heavy rains which flooded most lowland on the Tarkio River. The credibility of witnesses was a matter for the trial court who may believe none, part or all of their testimony. *Herbert v. Harl,* 757 S.W.2d 585, 587 (Mo. banc 1988). In the instant case, the McEnaneys' witnesses were deemed more credible, and supplied ample evidence to support the trial court's finding.

Finally, the Haiths challenge that part of the order which refuses to find the McEnaneys have an obligation to maintain the willow filled ditch and remove all obstructions therefrom. The court found the ditch to be a watercourse and refused to order the McEnaneys to clear the debris to allow a flow. This claim seems to be in direct conflict with the Haiths' prior prayers. In any event, the Haiths do not explain how an opposite finding would help their cause, nor has this court found support for such an argument.

■ Although this court believes the willow filled ditch is a mere conduit for surface water drainage and not a watercourse (for the same reasons as given *supra* for the conservation ditch), such a finding does not change the relief given. It stands to reason if a landowner may turn away surface water pursuant to the common enemy doctrine, the same landowner should not be required to clear a ditch whose sole purpose is to drain such surface water. A ruling of that nature would be adverse to and could not be reconciled with common enemy doctrine caselaw. The relief the Haiths ask for cannot be given.

The judgment of the trial court is affirmed in part and reversed in part. That part of the judgment which orders the Haiths to remove the berms from the south and west boundary of the McEnaneys' farm and which orders Atchison County to install a pipe under the county road at the north end of the Haiths' conservation ditch is reversed. That part of the judgment which orders the McEnaneys to increase the size of the tube in Deadman's Creek or enlarge the spillway so that a 50–year rain event will not be impeded and which refuses to place upon the McEnaneys a duty to clear the willow filled ditch is affirmed.

All concur.

APPENDIX